UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SPECIALTY SURPLUS INSURANCE
COMPANY, an Arizona corporation,

    Plaintiff,

v.

SECOND CHANCE, INC., et al., and BRENDA
CROCKETT, et al.,

    Defendants.

CASE NO. C03-0927C

ORDER

## I. INTRODUCTION

This matter has come before the Court on the Crockett Counterclaimants' motion to compel insurance adjuster files (Dkt. No. 85) and Specialty Surplus Insurance Company's ("Specialty Surplus") related motion for protective order (Dkt. No. 92). Defendant Second Chance joined in Specialty Surplus's motion. Having carefully considered the papers filed by the parties in support of and in opposition to the motions, the Court has determined that no oral argument shall be necessary. The Court finds and rules as follows.

## II. BACKGROUND

Specialty Surplus brought this declaratory judgment action to resolve an insurance policy

ORDER – 1

coverage dispute soon after agreeing to defend its insureds, Second Chance and John Moeller, under a reservation of rights.  Second Chance and John Moeller had been sued in the King County Superior Court for incidents in which Mr. Moeller, a urinalysis laboratory director for Second Chance, was alleged to have secretly videotaped individuals in the act of providing urine samples for testing.

On the first day of trial in state court, Mr. Moeller reached a settlement with the Crockett Counterclaimants (the plaintiffs in that matter) in which he "stipulated to judgments totaling about $4.9 million, coupled with a covenant not to execute against his personal assets and an assignment of his rights against Specialty Surplus and the Washington Insurance Guaranty Association."  (Specialty Surplus's Mot. for Prot. Order 2.)  The Crockett Counterclaimants subsequently dismissed their claims against Second Chance without any payment.

Specialty Surplus has since filed an amended complaint in the action before the Court, adding these new developments and requesting a determination that its policy provides no coverage for the Crockett claims.  In response, the Crockett Counterclaimants added a counterclaim of insurance bad faith against Specialty Surplus.  It is with respect to this latter counterclaim that the instant dispute over discovery of the insurance adjuster files arose.

At the beginning of the underlying state court case, Specialty Surplus assigned a single insurance adjuster to manage the defense of all claims regarding both Second Chance and Mr. Moeller.  It was not until January 5, 2005, less than three months before the state court case was due to go to trial, that Specialty Surplus assigned a separate adjuster for each defendant.  Mr. Jason Messler, who had handled the file since July 12, 2004, continued to handle the Second Chance claims, while Ms. Christine Phelan assumed responsibility for Mr. Moeller's file.  Both Mr. Messler and Ms. Phelan reported to Mr. Jerry Rallo.

During discovery in this case, the Crockett Counterclaimants requested production of the adjuster's claim file regarding Mr. Moeller's defense.  The Crockett Counterclaimants received only that portion of the file corresponding to the period after the claim files were split, *i.e.*, documents dated after

ORDER – 2

January 5, 2005. The Crockett Counterclaimants now seek to compel, and Specialty Surplus seeks to protect, that portion of the file having to do with Mr. Moeller's defense prior to January 5, 2005, when the claim files were still combined.

III.   ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) provides that

> [p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.

FED. R. CIV. P. 26(b)(1). Here, Specialty Surplus has declined to produce about twenty pages of materials from the combined claims file dated prior to January 5, 2005, on the grounds that the material withheld is not relevant and is protected by the attorney-client privilege and/or the work product protection.[1]

The requested discovery is alleged to be relevant to the Crockett Counterclaimants counterclaim regarding insurance bad faith. Under Washington law, "where an insurer acts in bad faith in handling a claim under a reservation of rights, the insurer is estopped from denying coverage." *Safeco Ins. Co. v. Butler*, 823 P.2d 499, 505 (Wash. 1992). Under *Butler*, an insurer who has acted in bad faith may be liable for damages extending beyond the contracted-for coverage. *Id.* 505–06 (explaining problems associated with limiting a remedy to the boundaries of the insurance contract). Because the information about the handling of Mr. Moeller's claim, if any, in the discovery withheld could be material to the Crockett Counterclaimants bad faith cause of action, the Court finds that the files are relevant.

Section (c) of Rule 26 provides that upon "good cause shown," a court may "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." The party seeking a protective discovery order must show good cause for the order

---

[1] During the time that the motions have been pending, Specialty Surplus has produced a redacted version of SSIC-SC-1369–70 and SSIC-SC-08–20.

ORDER – 3

by demonstrating the harm or prejudice that will result from the discovery. *Rivera v. Nibco*, 364 F.3d 1057, 1063 (9th Cir. 2004). That burden is a heavy one. *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)

Whether privilege in any given circumstance will be defined by state or federal law in an action in federal court is prescribed by Federal Rule of Evidence 501, which provides, in pertinent part, that "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness [or] person . . . shall be determined in accordance with State law." Here the parties agree that Washington state law regarding the attorney-client privilege applies.

In Washington, the attorney-client privilege is defined by Wash. Rev. Code § 5.60.060(2)(a), which provides that "[a]n attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." The attorney-client privilege may attach to documents as well as verbal communications. *Pappas v. Holloway*, 787 P.2d 30, 34 (Wash. 1990) (citing *Kammerer v. W. Gear Corp.*, 618 P.2d 1330, 1335 (Wash. Ct. App. 1980)). However, it is clear that attorney-client privilege protects only communications between an attorney and a client. *See, e.g.*, *Dietz v. Doe*, 935 P.2d 611, 615 (Wash. 1997) (citing John Henry Wigmore's "legal advice" test).

The work product doctrine is somewhat broader, protecting against "disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation." FED. R. CIV. P. 26(b)(3).

The documents at issue here are Specialty Surplus's files relating to the defense of Second Chance and Mr. Moeller prior to January 5, 2005. Although Mr. Moeller has waived any and all privileges that may have attached to these files, Second Chance has not.[2] (*See, e.g.*, Dkt. No. 98, Second Chance's

---

[2]The Crockett Counterclaimants argue that Second Chance waived any privileges it may have had when it disclosed information "while knowing full well that the same adjuster was handling both claim

ORDER – 4

Joinder.) The documents are Specialty Surplus adjusters' notes about Mr. Moeller's and Second Chance's defense. As such, the attorney-client privilege does not attach to these documents (not communications between an attorney and his or her client).[3]

However, the notes are protected by the work product doctrine. *See* FED. R. CIV. P. 26(b)(3) (including documents prepared by consultants, sureties, indemnitors, insurers, or agents). The work product doctrine's protection is not absolute: a party may obtain discovery of work product "upon a showing . . . [of] substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Because the notes contain information about Specialty Surplus's handling of Mr. Moeller's claim, the Court finds that the Crockett Counterclaimants have made a sufficient showing of substantial need. In addition, the papers filed in connection with the two motions under discussion have sufficiently established that the adjusters' notes are unique documents containing information that is not readily available elsewhere, if at all. Accordingly, although the work product privilege applies to the adjusters' notes, the Court finds that the Crockett Counterclaimants have made the requisite showing to justify an order compelling production of the notes and concomitantly denying Specialty Surplus's motion for a protective order.

---

files . . . knew that the files were mixed and also knew that the information was or could be shared with Mr. Moeller's insurance defense counsel." (Crockett Counterclaimants' Resp. to Specialty Surplus's Mot. 8.) The factual record now before the Court does not permit the Court to make a finding as to waiver. The record suggests that as soon as Second Chance and Mr. Moeller realized their interests were significantly adverse, Specialty Surplus split the file. In any case, there is nothing to suggest that the joint defense privilege might not apply, thus rendering Second Chance's relaying of information to its common adjuster non-cognizable as a waiver. *See Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 n.7 (9th Cir. 1987) (recognizing the joint defense privilege as an extension of the attorney-client privilege).

[3]Specialty Surplus appears to argue that the attorney-client privilege may attach to the adjusters' notes because they "report repeatedly on communications with Second Chance's counsel." (Specialty Surplus's Reply 4.) However, attorney-client privilege attaches to *communications* between an attorney and *his* or *her* client. Here, it is not clear that the documents in question qualify as "communications." More importantly, they were not made between an attorney and *his* or *her* client.

ORDER – 5

The Court recognizes that the documents yet undisclosed may contain information irrelevant to Mr. Moeller, and that they likely also contain "mental impressions, conclusions, opinions, or legal theories." Accordingly, the Court directs that Specialty Surplus submit, for *in camera* review, unredacted copies of the following:

SSIC-SC-08–20

SSIC-SC-226–29

SSIC-SC-393

SSIC-SC-1369–70.

In addition, Specialty Surplus may submit proposed redacted copies for the Court's review.

IV. CONCLUSION

The Crocket Counterclaimants' motion to compel is GRANTED, and Specialty Surplus's motion for a protective order is DENIED, both with limitations as specified above.

SO ORDERED this 22nd day of November, 2005.

/s/ John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER – 6