UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SPECIALTY SURPLUS INSURANCE COMPANY, an Arizona corporation,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>SECOND CHANCE, INC., a Washington corporation; JOHN MOELLER, a single person; PIONEER HUMAN SERVICES; BRENDA CROCKETT, et al.,<br><br>　　　　　　Defendants. | CASE NO. C03-0927C<br><br>ORDER |

　　　　This matter has come before the Court on Plaintiff Specialty Surplus's motion to compel the law firm of Gardner Bond Trabolsi St. Lewis & Clement PLLC ("Gardner Bond") to produce its complete files relating to its representation of John Moeller in *Rhodes v. Second Chance* and *Crockett v. Second Chance*. (Dkt. No. 113.) Having considered the papers filed by the parties in support of and in opposition to the motion, the Court hereby DENIES the motion.

　　　　The Crockett counterclaimants, who were assigned Mr. Moeller's rights against his insurers, have asserted bad faith counterclaims in this declaratory judgment action. More specifically, the Crockett counterclaimants allege that Plaintiff Specialty Surplus failed to defend Mr. Moeller in good faith.

ORDER – 1

In preparing its defense against this claim, Specialty Surplus subpoenaed the records custodian of Gardner Bond (the law firm retained by Specialty Surplus to defend Mr. Moeller in the underlying state court actions) to produce its complete file relating to its defense of Mr. Moeller. Gardner Bond objected, claiming privilege. (Dkt. No. 105.) Thus, the question before the Court is whether Mr. Moeller ever expressly or implicitly waived his privilege. Specialty Surplus argues that Mr. Moeller waived his privilege (1) when he expressly waived his privileges with respect to Specialty Surplus's claim file so that his assignees could obtain production of the same; (2) in his settlement agreement with the Crockett counterclaimants that he would provide correspondence with his insurers "and all other relevant information necessary to determine insurance coverage and/or relating in any manner to insurance coverage or to the insurers [*sic*] actions in defending this case" (Love Decl. Ex. 1 at 5–6); and (3) by, through his assignees, asserting and cooperating in a bad-faith claim against Specialty Surplus.

In Washington, the attorney-client privilege is defined by Wash. Rev. Code § 5.60.060(2)(a), which provides that "[a]n attorney or counselor shall not, without the consent of his or her client, be examined as to any communication made by the client to him or her, or his or her advice given thereon in the course of professional employment." The attorney-client privilege may attach to documents as well as verbal communications. *Pappas v. Holloway*, 787 P.2d 30, 34 (Wash. 1990) (citing *Kammerer v. W. Gear Corp.*, 618 P.2d 1330, 1335 (Wash. Ct. App. 1980)). While the plain language of the statute appears to bestow a no less than absolute privilege, Washington courts have found that this privilege may be waived. *See, e.g.*, *Kammerer v. W. Gear Corp.*, 635 P.2d 708 (Wash. 1981) (finding waiver where an attorney's testimony about certain matters was offered); *Pappas*, 787 P.2d 30 (bringing of a legal malpractice action against former attorneys constituted waiver of attorney-client privilege as to all attorneys formerly involved with the underlying lawsuit).

Here, Mr. Moeller's express statements of waiver apply to Specialty Surplus's claim file and information necessary to determine coverage or relating to Specialty Surplus's actions in defending the case. Thus, the question is whether Gardner Bond's files relating to its conduct of Mr. Moeller's defense

ORDER – 2

constitute "information necessary to determine coverage or relating to Specialty Surplus's actions in defending the case." The Court does not find that they do. In particular, the Court notes that the privileged information in the Gardner Bond files relates to Mr. Moeller's liability on the underlying claims (Dkt. No. 105, Gardner Bond Objs. to Subpoena 2) and thus has little relevance to the question of coverage. Thus, Mr. Moeller's agreement to provide information regarding coverage did not constitute an express waiver of his attorney-client privileged materials.

Accordingly, the Court declines to grant Specialty Surplus's motion on the grounds that Mr. Moeller's express waivers extend to the Gardner Bond files in question.

Plaintiff argues, in the alternative, that Mr. Moeller's assignment and his assignees' subsequent pursuit of his bad faith claims against Specialty Surplus constitute an implicit waiver of his privilege in the Gardner Bond files. For support, Plaintiff cites to *Pappas v. Holloway*, in which the bringing of a legal malpractice action against former attorneys was found to constitute a waiver of the attorney-client privilege as to all attorneys formerly involved with the underlying lawsuit. 787 P.2d 30. However, the operative facts of *Pappas* are very different from the ones in the present case. Most notably, the *Pappas* plaintiffs sued their attorneys for malpractice, thus requiring the court to examine the decisions made by the attorneys at each stage of the underlying litigation. 787 P.2d at 37. In other words, the *Pappas* plaintiffs had themselves made an issue of their attorneys' conduct and thus had implicitly waived their attorney-client privilege.

In contrast, the Crockett counterclaimants assert a bad faith claim against Mr. Moeller's insurer, the elements and proof of which are very different than in a legal malpractice claim. Under Washington law, an insurer has an "enhanced obligation" to its insured when defending under a reservation of rights. *Tank v. State Farm Fire & Cas. Co.*, 715 P.2d 1133, 1137 (Wash. 1986). This enhanced obligation includes (1) an obligation to retain competent counsel for the insured and to recognize that only the insured is the client; (2) an obligation to keep the insured fully informed at all times; and (3) an obligation to "refrain from engaging in any action which would demonstrate a greater concern for the insurer's

ORDER – 3

monetary interest than for the insured's financial risk." *Safeco Ins. Co. of Am. v. Butler*, 828 P.2d 499, 503 (Wash. 1992). Thus, the analysis involved in assessing the merits of the Crockett counterclaimants' bad faith claim will focus almost entirely upon the Specialty Surplus's conduct, rather than on Gardner Bond's conduct. For this reason, the Court does not find that Mr. Moeller's assignment of his rights and the Crockett counterclaimants' subsequent pursuit of the bad faith claim constitutes an implicit waiver of his attorney-client privilege. Accordingly, the Court declines to grant the motion to compel on the grounds that Mr. Moeller implicitly waived his attorney-client privilege.

A movant may obtain production of privileged material if it makes a sufficient showing of good cause. FED. R. CIV. P. 26(b)(1). Here, because Specialty Surplus seeks access to the files in order to find evidence of its own conduct, the Court finds that this evidence is obtainable from other sources that are more convenient, *i.e.*, Specialty Surplus's own resources. Without a showing of why Specialty Surplus cannot obtain this information through other avenues, the movant has failed to sustain its burden of demonstrating good cause under Rules 26(b)(1) and (b)(2). FED. R. CIV. P. 26(b)(1) (permitting a court to order discovery of any relevant material upon a showing of good cause") and (b)(2) (permitting a court to limit discovery if the discovery sought is obtainable from some other source that is more convenient, less burdensome, or less expensive). Therefore, the Court finds that Specialty Surplus has not shown good cause warranting abrogation of Mr. Moeller's attorney-client privilege.

Plaintiff's motion to compel is DENIED.

SO ORDERED this   4th   day of January, 2006.

_____
UNITED STATES DISTRICT JUDGE

ORDER – 4