The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SPECIALTY SURPLUS INSURANCE COMPANY, an Arizona corporation,

    Plaintiff,

        v.

SECOND CHANCE, INC., et al., and BRENDA CROCKETT, et al.,

    Defendants.

CASE NO. C03-0927C

ORDER

I.  INTRODUCTION

This matter has come before the Court on the Crockett Counterclaimants' motion for an order ruling that the law of the State of New York is controlling over matters related to punitive damages in this case. (Dkt. No. 159.) Having carefully considered the papers filed by the parties in support of and in opposition to the motion, the Court has determined that no oral argument shall be necessary. For the reasons that follow, the Court hereby GRANTS the motion.

II.  ANALYSIS

The Crockett Counterclaimants argue that because the alleged "acts on the part of Specialty

ORDER - 1

1  Surplus that caused John Moeller's injuries took place exclusively within the State of New York," New
2  York law should apply as to the availability of punitive damages in this case.

3  Since the Court's jurisdiction over this case is based on the parties' diversity of citizenship, the
4  Court must apply state substantive law to the claims and defenses raised by the parties. *Am. Triticale, Inc.*
5  *v. Nytco Servs., Inc.*, 664 F.2d 1136, 1141 (9th Cir. 1981) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78
6  (1938)). If the laws of more than one state arguably apply to the claims or defenses at issue, "a federal
7  court exercising diversity jurisdiction must apply the conflict-of-laws-rules of the state in which the federal
8  court is located." *Id.* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)).
9  Consequently, Washington's conflict of law rules should apply.

10  Under Washington law, the foreign jurisdiction's law should only be applied when there is an actual
11  conflict between the two sets of laws at issue. *Burnside v. Simpson Paper Co.*, 864 P.2d 937, 941 (Wash.
12  1994) (citing *Pac. Gamble Robinson Co. v. Lapp*, 622 P.2d 850, 854 (Wash. 1980)). The law to be applied
13  depends on the issue being addressed. *Fluke Corp. v. Hartford Accident & Indem. Co.*, 34 P.3d 809, 815
14  (Wash. 2001) (citing Restatement (Second) Conflict of Laws 188(2) (1971) for the principle that the
15  analysis should be performed with respect to the particular issue)). Therefore, while it may be appropriate
16  to apply the law of the forum state to one claim, or one part of a claim, it may also be appropriate to apply a
17  foreign jurisdiction's law to another claim or another part of the claim. That is the case here.

18  Where Washington law does not actually conflict with the foreign jurisdiction's law except on the
19  issue of damages, it may be appropriate to apply Washington substantive law to the liability analysis while
20  applying a foreign jurisdiction's law with respect to damages. RESTATEMENT (SECOND) OF CONFLICT OF
21  LAWS 2D §171 reporter's note, cmt. d (1971) ("RESTATEMENT OF CONFLICTS"). This is because one
22  jurisdiction may have the dominant interest in the liability portion of the analysis, but another jurisdiction
23  may, by virtue of the policies expressed in its damages regime, have a dominant interest in the damages
24

ORDER - 2

portion of the analysis.

Washington courts have adopted the "most significant relationship" test laid out by the Restatement of Conflicts for resolving choice of law issues in torts cases. *Haberman v. Wash. Pub. Power Supply Sys.*, 744 P.2d 1032, 1053 (Wash. 1987). This test requires the evaluation of the contacts of the interested jurisdictions with respect to the claims at issue and the interests and policies of those jurisdictions. *Southwell v. Widing Transp., Inc.*, 676 P.2d 477, 480 (Wash. 1984).

Here, Washington law provides that punitive damages are only available where expressly provided for by statute. *See Fluke Corp*, 7 P.3d at 831; *Barr v. Interbay Citizens Bank*, 635 P.2d 441, 443 (Wash. 1981). However, New York law permits punitive damages in cases where "a lawsuit has its genesis in the contractual relationship between the parties" if a court can "identify a tort independent of the contract." *New York Univ. v. Continental Ins. Co.*, 662 N.E.2d 763, 767 (N.Y. 1995). This category of cases includes insurance bad faith cases. *See, e.g.*, *Gordon v. Nationwide Mut. Ins. Co.*, 285 N.E.2d 849, 854 (N.Y. 1972); *New York Univ*, 662 N.E.2d at 767 (explaining that "[t]he very nature of a contractual obligation, and the public interest in seeing it performed with reasonable care, may give rise to a duty of reasonable care in performance of the contract obligations, and the breach of that independent duty will give rise to a tort claim."). Thus, there is an actual conflict between Washington and New York law with respect to the availability of punitive damages for an insurance bad faith claim. Since the availability of punitive damages is a strong expression of a jurisdiction's public policy, if the Court determines that the contacts analysis supports the application of New York's damages law, New York damages law must be applied.

Section 145 of the Restatement of Conflicts sets forth the following factors to be considered in the contacts prong of the analysis: 1) the place where the injury occurred; 2) the place where the conduct causing the injury occurred; 3) the domicile, residence, nationality, place of incorporation and place of business of the parties, and 4) the place where the relationship, if any, between the parties is centered.

ORDER - 3

1  Importantly, the contacts are to be evaluated according to their relative important with respect to the
2  particular issue. In Washington, the approach is not to count contacts, but to consider which contacts are
3  most significant and to determine where these contacts are found. *Baffin Land Corp. v. Monticello Motor*
4  *Inn, Inc.*, 70 Wash. 2d 893, 900, 425 P.2d 623 (Wash. 1967).

5  In the present case, it is arguable that the only "contact" with New York is the location of the
6  adjusters used to oversee the claims. However, the alleged conduct of these adjusters not only played a
7  critical role in causing the alleged harm to Mr. Moeller but is the target of New York's punitive damages
8  law. *See, e.g.*, *Walker v. Sheldon*, 179 N.E.2d 497, 498 (N.Y. 1961) (explaining that punitive damages are
9  available if "the wrong complained of is morally culpable, or is actuated by evil and reprehensible *motives*,
10 not only to *punish the defendant* but to *deter him*, as well as others who might otherwise be so prompted
11 from indulging in similar conduct in the future.") (emphasis added). Thus, since in the context of punitive
12 damages it is clear that the *defendant* is the focus of the analysis, the Court finds that the location of the
13 conduct causing the harm is the most significant contact and outweighs the other contacts.

14 Based on the above analysis, the Court finds: (1) there is an actual conflict of laws; (2) New York
15 has a stronger interest than Washington in the outcome of the punitive damages issue; and (3) New York
16 has more significant contacts for the purposes of the punitive damages issue. Accordingly, New York law
17 will be applied with respect to punitive damages.

18 The Crockett Counterclaimants' motion is therefore GRANTED.

*[signature]*

UNITED STATES DISTRICT JUDGE

ORDER - 4