The Honorable John C. Coughenour

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| SPECIALTY SURPLUS INSURANCE COMPANY, an Arizona corporation, | |
| Plaintiff, | CASE NO. C03-0927C |
| v. | ORDER |
| SECOND CHANCE, INC., a Washington corporation; JOHN MOELLER, a single person; PIONEER HUMAN SERVICES; BRENDA CROCKETT, et al., | |
| Defendants. | |
| SPECIALTY SURPLUS INSURANCE COMPANY, an Arizona corporation, | |
| Plaintiff, | |
| v. | |
| SECOND CHANCE, INC., a Washington corporation; JOHN MOELLER, a single person; PIONEER HUMAN SERVICES and JUSTINE RHODES, a single person, | |
| Defendants. | |

ORDER - 1

## I. INTRODUCTION

This matter has come before the Court on Plaintiff Specialty Surplus's motion for a protective order regarding the Crockett Counterclaimants' notice of 30(b)(6) deposition seeking Specialty Surplus's financial information. Having carefully considered the papers filed by the parties, the Court has determined that no oral argument shall be necessary. The Court hereby GRANTS the motion.

## II. BACKGROUND

In March, the Court granted the Crockett Counterclaimants' motion for an order finding that the law of the state of New York will control matters related to punitive damages in this case. (Dkt. No. 172.) Plaintiff's present motion asks that the case be bifurcated into a liability phase and a punitive damages phase, and that the Crockett Counterclaimants not be permitted to take any discovery of financial information until after a jury has found that Plaintiff is liable. In addition, Plaintiff asks that in the event that a bifurcated trial proceeds to the punitive damages phase, the Crockett Counterclaimants' discovery of Plaintiff's financial information be strictly limited.

As the Crockett Counterclaimants do not oppose the motion to bifurcate the trial, that portion of Plaintiff's motion is GRANTED.

## III. ANALYSIS

The parties dispute whether New York's discovery procedures pertaining to punitive damages cases are applicable to this case. They do not, however, dispute what those discovery procedures are. (*See* Crockett Resp. 4 (stating "It is true that the law of New York typically requires that discovery into a defendant's financial matters typically not occur until after the jury has answered in the affirmative with respect to whether punitive damages should be awarded.").) Thus, the issue is whether under *Wray v. Gregory*, 61 F.3d 1414 (9th Cir. 1995), this Court should apply New York's rule and disallow the Crockett Counterclaimants' attempt to conduct discovery into Plaintiff's financial state.

ORDER - 2

*Wray* recognized that

> [a]lthough the Federal Rules of Evidence ordinarily govern in diversity cases, they do not always. Where a state evidence rule is intimately bound up with the rights and obligations being asserted, *Erie* mandates the application of a state rule in a diversity suit.

61 F.3d at 1417. The *Wray* inquiry in the present case is thus whether New York's rule that discovery into financial matters for the purpose of pursuing a punitive damages claim is intimately bound up with the rights and obligations being asserted.

A New York appellate court, in reversing a trial court's order denying a motion for a protective order regarding pre-trial discovery into financial matters found good reason to reverse the trial court on this issue. *Rupert v. Sellers*, 48 A.D. 2d 265, 272 (N.Y. App. Div. 1975). The *Rupert* Court remarked that "it is readily seen that a rule permitting unlimited examination before trial of a defendant as to his wealth in a punitive damage action could have unfortunate results. It could constitute undue pressure on defendants in such actions to compromise unwarranted claims." *Id.* at 271. The court further explained that "Defendant's wealth should not be a weapon to be used by plaintiff to enable him to induce the jury to find the defendant guilty of malice." *Id.* at 272. From these comments, it is clear that the *Rupert* Court was concerned that allowing plaintiffs to conduct discovery into a defendant's wealth for the purpose of pursuing a punitive damages claim would allow plaintiffs to coerce a possibly unjust result, thus violating the defendant's right to a fair trial on the issue. This Court is persuaded by the *Rupert* Court's reasoning and adopts it in finding that New York's practice of delaying financial discovery for punitive damages purposes is intimately bound up with Plaintiff's right to defend itself on the merits of the Crockett Counterclaimants' complaint.

Although the Crockett Counterclaimants spend some time explaining why a punitive damages award is probable, the New York rule does not allow punitive damages-related financial discovery until after a plaintiff has received a special verdict indicating that plaintiff shall be entitled to punitive damages.

ORDER - 3

*Id*. There has been no such finding in this case entitling the Crockett Counterclaimants to punitive damages.

For the foregoing reasons, the Court finds that the New York rule precluding plaintiffs from obtaining the same sort of discovery sought here by the Crockett Counterclaimants requires that Plaintiff's motion for a protective order be GRANTED.[1]

SO ORDERED this 23rd day of May, 2006.

_____
UNITED STATES DISTRICT JUDGE

---

[1] In addition, the *Rupert* Court was concerned about the scope of permissible discovery. Having considered the matter, it stated that "[s]ince the purpose of presenting to the jury the amount of defendant's wealth is only to furnish to them a guide for suitable punishment, there is no need for a plaintiff to explore the details of a defendant's [assets] and liabilities." *Id*. The court concluded that plaintiffs pursuing punitive damages claims would only be entitled to "have each defendant submit, orally or in writing, a sworn statement of his net worth, and in connection therewith may examine copies of each defendant's income tax returns for not to exceed five years immediately preceding." *Id*. This Court is persuaded by the *Rupert* Court's reasoning and finds that similar narrowly defined discovery parameters will be appropriate in the present case. The Court, however, declines to make a final determination at this time as to the exact parameters of the discovery to be permitted. Shortly before trial, the parties shall be asked to submit proposed discovery plans.

ORDER - 4